UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| TINA C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:21-cv-00009-MJD-JPH |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Claimant Tina C. applied for supplemental security income ("SSI") from the Social Security Administration ("SSA") on December 31, 2018, alleging an onset date of January 1, 2016. [Dkt. 15-5 at 2.] Her application was initially denied on April 24, 2019, [Dkt. 15-4 at 6], and upon reconsideration on June 28, 2019, [Dkt. 15-4 at 12]. Administrative Law Judge David Read conducted a hearing on June 24, 2020. [Dkt. 15-2 at 34-64.] During the hearing, Claimant amended her alleged onset date to December 31, 2018. [Dkt. 15-2 at 39.] The ALJ issued a decision on August 11, 2020, concluding that Claimant was not entitled to receive benefits. [Dkt. 15-2 at 15-26.] The Appeals Council denied review on November 9, 2020. [Dkt. 15-2 at

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

2.] On January 6, 2021, Claimant timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c). [Dkt. 1.]

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[2] "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects. Cases like *Clifford* may reference the section pertaining to only one type of benefits. 227 F.3d at 868 (citing 20 C.F.R. § 404.1520). Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.920. The Court will take care to detail any applicable substantive differences but will not always reference the parallel section.

through Four; only at Step Five does the burden shift to the Commissioner.  *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also appropriate when the decision is not supported by substantial evidence.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. **BACKGROUND**

Claimant was 49 years old on her amended alleged onset date.  [*See* Dkt. 15-5 at 2.]  She completed the eleventh grade.  [Dkt. 15-6 at 6.]  She has worked as a store clerk and production worker.  [Dkt. 15-6 at 6.][3]

The ALJ followed the five-step sequential evaluation in 20 C.F.R. § 416.920(a)(4) and concluded that Claimant was not disabled.  [Dkt. 15-2 at 25-26.]  Specifically, the ALJ found as follows:

- At Step One, Claimant had not engaged in substantial gainful activity[4] since December 31, 2018, the amended onset date.  [Dkt. 15-2 at 20.]

- At Step Two, she had "the following severe impairments: lumbar degenerative disc disease status post-surgery and bilateral carpal tunnel syndrome."  [Dkt. 15-2 at 20 (citation omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [Dkt. 15-2 at 21.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

- After Step Three but before Step Four, Claimant had the RFC "to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently handle and finger bilaterally. The claimant can occasionally climb ramps and stairs, can occasionally climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally work at unprotected heights. The claimant would be off-task less than 10% of the workday." [Dkt. 15-2 at 21.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Claimant's RFC, she was incapable of performing her past relevant work as a wrapping and packing machine worker. [Dkt. 15-2 at 24.]

- At Step Five, relying on the VE's testimony and considering Claimant's age, education, work experience, and RFC, she could perform other work with jobs existing in significant numbers in the national economy in representative occupations like a marker, inspector/hand packager, and small products assembler. [Dkt. 15-2 at 24-25.]

### III. DISCUSSION

Claimant asserts three errors, arguing that: (1) the ALJ erred in assessing her RFC because he did not consider her fibromyalgia and chronic pain syndrome; (2) the ALJ did not accommodate her distractibility due to severe pain, side effects, and frequent need to shift positions, nor did he explain how he determined that she would be off task for less than ten percent of the workday; and (3) the ALJ failed to follow Social Security Ruling ("SSR") 16-3p when evaluating her statements concerning her subjective symptoms. The Court will address the arguments as necessary to resolve the appeal.

### A. Subjective Symptoms Evaluation

When evaluating a claimant's subjective statements about the intensity and persistence of symptoms, the ALJ must often make a credibility determination concerning the limiting effects of those symptoms. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Reviewing courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). If a fully favorable determination cannot be made based solely on the objective medical evidence,

5

SSR 16-3p directs the ALJ to consider "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms . . . ." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *6–8. This includes the regulatory factors relevant to a claimant's symptoms, like daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. Id. at *7-8; 20 C.F.R. § 416.929(c)(3). The ALJ need only "discuss the factors pertinent to the evidence of record." SSR 16-3p, 2017 WL 5180304, at *8. The ALJ should also consider any inconsistencies with the evidence, including conflicting statements made by the claimant and others like treating sources. 20 C.F.R. § 416.929(c)(4).

    Claimant contends that the ALJ made various errors when assessing her credibility by: relying on "review of systems" sections of treatment notes that did not appear to accurately capture her reported symptoms when compared with the rest of the visit notes, repeatedly calling her treatment "conservative," not acknowledging the wide array of medications she was prescribed during the period at issue, not analyzing her reported side effects from those medications, and making no attempt to satisfy the "requirements" of SSR 16-3p (by analyzing the statutory factors and doing more than summarizing medical records). [Dkt. 17 at 26-30.]

    The ALJ concluded that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." [Dkt. 15-2 at 22.] In the subsequent paragraph, the ALJ explained:

> Regarding the claimant's degenerative disc disease, the record indicates the claimant complained of back pain, bilateral lower extremity pain, paresthesia in her bilateral lower extremities and bilateral feet, and lower back spasms. The record also indicates that the claimant underwent surgery on her back in December 2018 (Exhibit 3F/76; 4F/1/2/31; 5F/47; 10F/4). Examinations during the relevant period showed back tenderness; tenderness in her bilateral lower extremities; poor posture; exaggerated lumbar lordosis; a slow cadence; diminished sensation; positive straight leg raise; and extremity tenderness (Exhibit 3F/8; 4F/4/14/34; 5F/50; 6F/6; 8F/48; 10F/21/40/70; 11F/15). However, examinations also showed intact sensation in her bilateral upper and lower extremities; normal movement in her upper and lower extremities; normal stride; normal strength; intact musculoskeletal range of motion; normal range of motion in her back; normal coordination; no back tenderness; and normal spinal mobility (Exhibit 3F/8; 4F/19/28/34; 5F/50; 6F/6; 8F/14/48/63; 10F/4/83; 11F/15). Diagnostics showed degenerative changes in her lumbar spine (Exhibit 8F/83). Additionally, testing in October 2019 showed old left S1 and/or S2 nerve root lesion, but no evidence of lumbosacral nerve root lesion on the right and no acute abnormality (Exhibit 8F/22). The claimant was treated conservatively with medication during the relevant period (Exhibit 4F/1/5; 8F/81). The claimant actively denied symptoms during the relevant period, including musculoskeletal decreased range of motion, numbness, back pain, stiffness, and weakness (Exhibit 5F/57; 8F/62; 11F/9). The claimant also used a four-wheeled walker in November 2019 (Exhibit 10F/40). However, the claimant was ambulating without an assistive device in January and February 2020 (Exhibit 10F/70/83). In addition, in August of 2019 the claimant complained of lower back pain but the provider noted that the claimant had been ambulating in the ER without distress and had signs of drug-seeking behavior so [he] referred the claimant to pain management (Exhibit 8F/81).

[Dkt. 15-2 at 22.]

On August 9, 2019, Claimant presented to the emergency room with a chief complaint of back pain. [Dkt. 15-8 at 204.] The attending physician assistant listed Claimant's differential diagnoses as "back pain, drug seeking behavior, spinal fracture, [urinary tract infection], [and a] spinal abscess." [Dkt. 15-8 at 205.] The Cleveland Clinic explains what a differential diagnosis is:

> When you visit your healthcare provider with symptoms, they will begin a process to diagnose your condition. Since there are a lot of different conditions that often share similar symptoms, your provider will create a differential diagnosis, which is a list of possible conditions that could cause your symptoms.

> A differential diagnosis is not your official diagnosis, but a step before determining what could cause your symptoms.

https://my.clevelandclinic.org/health/diagnostics/22327-differential-diagnosis (last visited April 4, 2022). After a urinalysis excluded a urinary tract infection, the physician assistant's assessment was ultimately back pain rather than drug seeking behavior, Claimant was administered a cocktail of injected medications including morphine, prescribed a muscle relaxer and topical lidocaine, and she was referred to her pain management provider for further treatment. [Dkt. 15-8 at 205-06.] The physician assistant also explained his medical decision making by noting that Claimant had no urinary symptoms, she had "known back issues," and her "pain [was] improved and [patient was] noted to be ambulatory here in the [emergency room] without distress." [Dkt. 15-8 at 205.] The emergency room encounter does not provide a reasonable basis to discredit Claimant's pain assertions.[5] The provider did not conclude that she was drug seeking and he ultimately administered narcotic medication to address her pain. His observation that her pain improved with treatment and she was able to ambulate without distress after receiving morphine does not diminish her allegations of pain.

After the point Claimant started using a four-wheeled walker, her pain management doctor recorded her to be ambulating without an assistive device—though her "cadence" was slow—in January and February 2020. [Dkt. 15-9 at 71; Dkt. 15-9 at 84.] Claimant testified that she used her walker "constantly," but she immediately clarified that "every now and then" she did not use it, even though she estimated that she used it more that she did not. [Dkt. 15-2 at 46.]

---

[5] The Commissioner identified the evidence of this emergency room encounter as a reasonable basis of support for the ALJ's subjective symptoms evaluation. [Dkt. 18 at 16.] The Court disagrees that a fair reading of the evidence supports the ALJ's relevant evaluation, but Claimant's counsel could have provided more assistance to the Court had she addressed the evidence in her reply brief, rather than filing a general reply that did not apply any of the facts of the case to her contentions and cited legal authority. [See Dkt. 19.]

The fact she was not using the walker during certain examinations is not necessarily inconsistent with her testimony.

The ALJ's reliance on review of systems sections of treatment notes does not support his evaluation. At least, his cited examples do not. On April 9, 2019, Claimant's primary care physician recorded in the review of systems section that Claimant denied "back pain, joint pain," "muscle cramps, muscle weakness," "pain at rest," and "pain with activity." [Dkt. 15-7 at 310.] However, the purpose of the visit was identified as "chronic back pain due to failed back syndrome [and] fibromyalgia." [Dkt. 15-7 at 307.] And her physician also recorded that she reported muscle/joint pain in her "back, hips, [and] legs," that was "sharp, dull, achy, [and] shooting," made worse by "anything," and better by "nothing." [Dkt. 15-7 at 309-10.] On August 26, 2019, Claimant went to the emergency room with a chief complaint of a sore throat, her presenting illness also included a "dry cough," and her chronic problems were listed including back pain and bilateral leg pain, but her review of systems included "no cough" and "[n]o acute joint swelling or decreased range of motion." [Dkt. 15-8 at 186.] On October 22, 2019, her primary care physician again recorded in the review of systems section that she denied back pain, muscle weakness, and pain with activity or rest. [Dkt. 15-9 at 110.] But the history of the present illness section recorded that Claimant reported that her "[l]egs give out due to back pain. Surgery was unsuccessful." [Dkt. 15-9 at 108.]

The ALJ's own summary and the evidence that he cited showed that Claimant underwent back surgery, visited the emergency room for back pain, and received pain management treatment during the period at issue. Regardless of semantic designations like her treatment was "conservative," the ALJ did not identify treatment that was lacking, recommended, declined, or even expected to be found in the record.

9

The ALJ summarized clinical findings that he found both supportive and unsupportive of Claimant's complaints. However, even if the Court cannot disturb the ALJ's assignment of weight given to the clinical findings, the ALJ may not rely solely on a lack of objective verification of Claimant's allegations of pain. *See, e.g.*, *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015); *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016); SSR 16-3p, 2017 WL 5180304, at *4-5. The ALJ failed to marshal forth substantial evidentiary support for any additional justification for his adverse credibility finding concerning Claimant's pain, either in the most pertinent portion of the decision quoted above or elsewhere.

The Commissioner contends that the ALJ was entitled to credit the "uncontroverted" prior administrative medical findings of the state agency consultant who reviewed the record at the reconsideration phase over Claimant's "own more limiting account of her limitations." [Dkt. 18 at 17.] The ALJ found the consultant's assessment "to be partially persuasive" that Claimant was limited to a range of light exertional work, but the ALJ also added "additional postural, manipulative, and environmental limitations, as well as the allowance for time off-task," in part, because of "her subjective complaints." [Dkt. 15-2 at 23-24.] First, the Seventh Circuit has explained that "the ALJ cannot delegate to any doctor, and certainly not to a non-examining doctor, the task of evaluating the claimant's credibility." *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). Second, there is no indication that the ALJ relied on any aspect of the reviewing consultant's assessment to evaluate Claimant's subjective symptoms. The Commissioner cannot "defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (additional citations omitted)).

The ALJ did not explicitly state the grounds upon which his adverse credibility finding was based, nor did he identify evidence that provides a reasonable basis for the Court to glean a justification for his evaluation. In short, the ALJ did not provide a logical bridge from the record evidence to his adverse conclusion. Accordingly, remand for further consideration of Claimant's subjective symptoms is necessary.

### B. Other Arguments

The ALJ omitted any discussion of Claimant's fibromyalgia and chronic pain syndrome diagnoses. The Seventh Circuit has explained that "the ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985). The Commissioner contends that "any error the ALJ committed by omitting explicit discussion of these diagnoses was at worst harmless." [Dkt. 18 at 9.] However, given that the Court has determined that remand is necessary for further consideration of Claimant's subjective symptoms, further consideration of the entire record, including Claimant's pain-related diagnoses and any supported RFC limitations, will be necessary on remand. Accordingly, Claimant's remaining arguments are rendered moot.

### IV. **CONCLUSION**

For the reasons explained above, the Court **REVERSES** the ALJ's decision denying Claimant benefits and **REMANDS** this matter for further proceedings consistent with this Order.

SO ORDERED.

Dated: 5 APR 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.

Distribution:

Service will be made electronically
on all ECF-registered counsel of record
via email generated by the Court's ECF system.